# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**TIRRELL A. MORTON,**

 Plaintiff,

**v.**  **CIVIL ACTION NO. 3:12-CV-122**
  **(JUDGE GROH)**

**JOHN SHEELEY, Administrator,**
**Eastern Regional Jail; GOV. EARL**
**RAY TOMBLIN, Governor of the**
**State of West Virginia, and WEST**
**VIRGINIA REGIONAL JAIL AUTHORITY,**

 Defendants.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

This matter is before the Court for consideration of the Amended Report and Recommendation ("R&R") of United States Magistrate Judge James E. Seibert. By standing order, this action was referred to Magistrate Judge Seibert for submission of a proposed R&R. Magistrate Judge Seibert filed his R&R on July 3, 2014 [Doc. 59]. He recommends that this Court grant the defendants' Motion to dismiss [Doc. 43], dismiss the complaint with prejudice for failure to state a claim upon which relief can be granted, and deny as moot the Plaintiff's second Motion to Amend his complaint [Doc. 34].

### I. Background

The *pro se* Plaintiff was an inmate at the Eastern Regional Jail ("ERJ") in Martinsburg, West Virginia. On October 12, 2012, he filed this action against the ERJ, John Sheeley, Governor Earl Ray Tomblin, and the West Virginia Regional Jail Authority

pursuant to 42 U.S.C. § 1983.  His complaint alleges that the defendants violated his First Amendment right to free exercise of religion and the Eighth Amendment's protection against cruel and unusual punishment.

After screening the Complaint pursuant to 28 U.S.C. § 1915A(b), the magistrate judge entered an R&R that recommended dismissing all defendants.  The Plaintiff objected to the R&R and moved to amend his complaint for the purpose of proceeding only against Governor Tomblin and Sheeley.  On December 30, 2013, the Court granted the motion to amend and adopted the R&R in part.  In doing so, the Court dismissed all claims except for Claim Four–a claim alleging unconstitutional overcrowding due to double bunking of inmates.  The Court found that the complaint stated a plausible basis for holding Governor Tomblin and Sheeley liable in their personal capacity for this claim because the allegation that the defendants approved top bunks, taken as true, evidenced involvement in the averred overcrowding.  Dec. 30, 2013 Order at 8.  The Court did not determine whether the complaint stated an official or supervisory capacity claim against Governor Tomblin or Sheeley or whether Governor Tomblin or Sheeley are immune from suit.  Id. at 9 n.3.

On January 13, 2014, the Plaintiff filed a "Motion to Amend Complaint, Supplement and Objection Response to Report & Recommendation."  The Court denied the objections to the prior R&R as moot because the Court had already ruled on it.

On February 13, 2013, the Defendants filed a Motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). They argue that dismissal is appropriate because, among other things, they are entitled to qualified immunity.  On July 2, 2014, the magistrate judge entered an R&R recommending that the Court grant the Motion to dismiss and deny as moot the Plaintiff's second Motion to Amend his complaint.  He filed an amended R&R the

2

next day for the sole purpose of making a specific recommendation concerning the Motion to dismiss in the R&R's conclusion section. On July 15, 2014, the Plaintiff filed objections to the R&R and moved for appointment of counsel.

## II. Standards of Review

### 1. R&R

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court must make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. Thomas v. Arn, 474 U.S. 140, 150 (1985). Failure to timely file objections constitutes a waiver of *de novo* review and the Plaintiff's right to appeal this Court's order. 28 U.S.C. § 636(b)(1); Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to the R&R were due within fourteen days after being served with a copy of the R&R. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Plaintiff timely filed his objections. Accordingly, the Court will review *de novo* those portions of the magistrate judge's findings to which the Plaintiff objects and the remainder of the R&R for clear error.

### 2. Motion to Amend

"A party may amend its pleading once as a matter of course . . . if the pleading is one to which a responsive pleading is required, [within] 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). Otherwise, "a party may amend its

pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Because the Plaintiff previously amended his complaint and the Defendants do not consent to his motion, he may amend his complaint only with the Court's permission.

A court should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). Delay alone does not justify denying leave to amend. See id. Prejudice, bad faith, or futility must accompany the delay. See Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999).

As for the prejudice inquiry, the Fourth Circuit has stated:

> Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.

Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006) (citations omitted).

A court should deny leave to amend based on futility when the proposed amendment is clearly insufficient or frivolous on its face. See Johnson, 785 F.2d at 510; Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980). A proposed amendment is futile "if . . . [it] fails to satisfy the requirements of the federal rules." United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted); see also United States v. Pittman, 209 F.3d 314, 318 (4th Cir. 2000) (affirming district court's holding

4

that amendment was futile as the statute of limitations barred it and it did not relate back). For example, "[a]n amendment is futile if the proposed claim would not withstand a motion to dismiss." Woods v. Bennett, Civil Action No. 2:12-03592, 2013 WL 4779018, at *3 (S.D.W. Va. Sept. 5, 2013) (citing Perkins v. United States, 55 F.3d 910, 917 (4th Cir.1995)).

### 3. Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "'detailed factual allegations,'" it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" Id. (quoting Twombly, 550 U.S. at 555, 557). Twombly's plausibility standard applies to *pro se* complaints, Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008), but a court must construe such complaints liberally. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Additionally, when reviewing a Rule 12(b)(6) motion, a court must assume that the complaint's well-pleaded allegations are true, resolve all doubts and inferences in favor of the plaintiff, and view the allegations in a light most favorable to the plaintiff. Edwards, 178 F.3d at 243-44. Only factual allegations receive the presumption of truth. Iqbal, 556 U.S. at 678-79. A court may also consider facts derived from sources beyond the complaint, including documents attached to the complaint, documents attached to the motion to

dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Federal Rule of Evidence 201. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

### III. Discussion

#### 1. Second Motion to Amend Complaint

Magistrate Judge Seibert recommends denying the Plaintiff's second Motion to Amend his complaint as moot. The Plaintiff does not object to this recommendation. Accordingly, the Court reviews this recommendation for clear error and finds none.

#### 2. Motion to Dismiss

The Plaintiff lodges two general objections to the recommended disposition of the motion to dismiss. The Court will consider these objections before reaching this recommendation's substance.

First, the Plaintiff argues that the Court should not consider this motion because the defendants did not answer the complaint and the motion to dismiss does not contain any exhibits or other attachments. Pl.'s Resp. at 5-6. A defendant may file a motion to dismiss before answering the complaint. See Fed. R. Civ. P. 12(b). There also is no requirement that a defendant support a motion to dismiss with exhibits. See id. Accordingly, the Court **OVERRULES** this objection because the defendants properly filed their motion to dismiss.

Second, the Plaintiff argues the R&R is improper because, in the December 30, 2013 Order, this Court "established that [he] was suing in the personal capacity and . . . already established plausible cause for such." Pl.'s Resp. at 1. The Court previously found that the complaint alleged a plausible basis for personal capacity liability as to Governor

6

Tomblin and Sheeley. The Court did not, however, consider whether the defendants are immune from such liability. The defendants are now asserting that defense. Accordingly, the Court **OVERRULES** this objection because the prior Order does not preclude the qualified immunity defense.

>    a.   **Failure to State a Claim Against West Virginia Regional Jail Authority**

Magistrate Judge Seibert recommends dismissing the West Virginia Regional Jail Authority because it is not a "person" subject to a § 1983 suit. The Plaintiff does not object to this recommendation. Accordingly, the Court reviews this portion of the R&R for clear error and finds none. See Roach v. Burke, 825 F. Supp. 116, 118 (N.D.W. Va. 1993) (holding jail authority not a "person" under § 1983).

>    b.   **Failure to State a Claim Against Governor Tomblin and Sheeley**

Next, Magistrate Judge Seibert recommends dismissing Governor Tomblin and Sheeley because the Plaintiff fails to state a claim for holding them liable in their official or supervisory capacity and they are entitled to qualified immunity from personal liability. The Plaintiff objects to this recommendation as follows:

> [Plaintiff] has stated in his Amended complaint that he has on numerous occassions [sic] tried to address these overcrowding issues with John Sheeley only to be ignored. Clearly John Sheeley had a direct action if not even a supervisory action in this procedure of the addition of top bunks being added to the cells of the ERJ. For one he had to submit the paperwork for the funding. Get the security clearance for the contractors to be allowed in the jail to conduct the work that was being done. He had to submit the paperwork for the inspector to come in and approve the addition of these bunks where [sic] safe to sleep on. Along with the fact that John Sheeley and Earl Ray Tomblin both had direct and supervisory actions of this matter along with that the fact this building has a fire and people capacity legal limit in which both the defendants had knowledge of and choose to ignore and

7

have an [sic] deliberate indifference for my health, safety and welfare not to mention the law, regulations, costumes [sic] and policies of the State.

. . .

Again John Sheeley knows that the capacity legal limits of the ERJ so he himself choose [sic] to violate the laws by exceeding these legal limits and in his personal capacity he has a legal, moral and ethical obligation to ensure the safety of not only the staff, visitors and inmates of the ERJ. By John Sheeley's actions of ignoring these laws and policies as well as possibly falsifying the number of occupancies of the ERJ, created a direct violation of the law and [the Plaintiff's] constitutional rights. . . . Also as to the grievance issue both defendants played a direct role and supervisry [sic] role, due to the fact ERJ has and [sic] audit yearly and submits request for the fiscal year for funds to show what the funds from the previous year has been spent on. The addition of top bunks and grievances are listed on this request and then factor in the channels that these procedures must go through for approval and be reported to the proper official this would include John Sheeley and Earl Tomblin in this matter of people to have knowledge of the matter firsthand.

Pl.'s Resp. at 2, 6.

### i. Official and Supervisory Capacity Liability

*Respondeat superior* liability is not available in § 1983 claims. See Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978). A supervisor, however, may be liable for a subordinate's acts done pursuant to an official policy or custom for which he is responsible. Fisher v. Wash. Metro. Area Transit Auth., 690 F.2d 1113, 1142-43 (4th Cir. 1982). Additionally, a supervisor may be liable under § 1983 if the plaintiff establishes:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). A risk is pervasive

and unreasonable if "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Id. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." Id.

Here, the complaint does not state sufficient facts for holding Governor Tomblin or Sheeley liable in their official or supervisory capacity for Claim Four. There are no allegations that either defendant enacted or was otherwise responsible for an official policy or custom that caused the conditions of which the Plaintiff complains. See Joe v. Ozmint, Civil Action No. 2:08-585PMDRSC, 2009 WL 3124425, at *7 (D.S.C. Sept. 29, 2009) (finding no basis for official capacity liability where there were no allegations that defendants instituted an official policy that caused the conditions at issue). Official capacity liability therefore is improper. See Fisher, 690 F.2d at 1142-43. The complaint also does not allege sufficient facts to establish supervisory liability. Claim Four at most alleges that Governor Tomblin and Sheeley approved top bunks and overcrowding resulted. These facts do not make it plausible that they had actual or constructive knowledge of the alleged overcrowding. Indeed, the alleged involvement is very limited. To the extent that the Plaintiff objects that the defendants are subject to supervisory liability because they processed paperwork concerning funding and an audit, such allegations do not make it plausible that Governor Tomblin or Sheeley had actual or constructive awareness of the alleged overcrowding or committed deliberate indifference. See Tracey v. Nelson, Civil Action No. 1:12-1614-JMC-SVH, 2012 WL 4583107, at *2 (D.S.C. Aug. 31, 2012) (finding allegations that governor was responsible for not enforcing laws concerning overcrowding

and oversaw spending concerning inmate care did not show that governor was aware of or deliberately indifferent to any risk to plaintiff). Accordingly, the Court **OVERRULES** the objection to this portion of the R&R because the complaint does not state a plausible claim for official or supervisory capacity liability.

### ii. Qualified Immunity from Personal Capacity Liability

To hold a state official liable in his personal capacity in a § 1983 suit, the plaintiff must establish "that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). This liability, however, is limited. "The doctrine of qualified liability protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 236 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Two important interests underlie this doctrine–"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. Further, because "[q]ualified immunity is an entitlement not to stand trial or face the other burdens of litigation," Mensh v. Dyer, 956 F.2d 36, 39 (4th Cir. 1991) (quotation marks omitted), it is critical to resolve an immunity question "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

The Supreme Court mandated a two-step sequence for resolving qualified immunity claims in Saucier v. Katz, 533 U.S. 194 (2001). First, a court must decide "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."

Pearson v. Callahan, 555 U.S. 223, 236 (2009) (quoting Saucier, 533 U.S. at 201) (internal citations omitted). If the plaintiff satisfies the first step, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. (quoting Saucier, 533 U.S. at 201). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citation omitted). Further, courts may exercise their "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

Here, Governor Tomblin and Sheeley are entitled to qualified immunity. The Supreme Court has not clearly established the degree of overcrowding that is unconstitutional. Duran v. Merline, 923 F. Supp. 2d 702, 718 (D.N.J. 2013) (citing Hubbard v. Taylor, 538 F.3d 229, 236 (3d Cir. 2008) and Bell v. Wolfish, 441 U.S. 520, 541-43 (1979)). For example, in Bell, the Supreme Court held that double-bunking did not violate the Constitution. 441 U.S. at 543. The Fourth Circuit has not provided further guidance, having "held that 'double-celling' . . . was not itself a violation of the Constitution." Johnson v. Levine, 588 F.2d 1378, 1380 (4th Cir. 1978) (citing Hite v. Leeke, 564 F.2d 670 (4th Cir. 1977)). Given the lack of clarity concerning at what point double-bunking creates unconstitutional overcrowding, a reasonable official may not have appreciated that approving top bunks would violate the Eighth Amendment. See Duran, 923 F. Supp. 2d at 718. It therefore cannot be said that the alleged right was "clearly established" when any approval occurred. See Pearson, 555 U.S. at 236. Accordingly, the Court **OVERRULES** the objection to this portion of the R&R because the Defendants are entitled to qualified

immunity. Having found that the complaint fails to state a claim upon which relief can be granted against Governor Tomblin and Sheeley, the Court will grant the motion to dismiss.

## IV. Conclusion

Upon careful review of the record, the Court **OVERRULES** the Plaintiff's Objections. It is the opinion of this Court that the magistrate judge's Report and Recommendation should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated therein. Accordingly, the Court **GRANTS** the Defendants' Motion to Dismiss and hereby **DISMISSES** this case **WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

The Court **DENIES AS MOOT** the Plaintiff's second Motion to Amend his Complaint.

The Court **DENIES AS MOOT** the Plaintiff's Motion to Appoint Counsel.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and the *pro se* Plaintiff.

**DATED:** July 24, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE